2006 WY 123

### BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR, Petitioner,

v.

### L. Robert MURRAY, Wyoming State Bar Attorney No. 5-2874, Respondent.

No. D-06-5.

Supreme Court of Wyoming.

Sept. 27, 2006.

Paul J. Hickey, Esq., Attorney for Respondent, Cheyenne.

## ORDER OF PUBLIC CENSURE

BARTON R. VOIGT, Chief Justice.

This matter came before the Court upon a "Report and Recommendation for Public Censure," filed herein September 13, 2006, by the Board of Professional Responsibility for the Wyoming State Bar. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation, Bar Counsel's "Motion for Public Censure and to File a Report and Recommendation for Discipline," the Respondent's "Section 16 Affidavit and Stipulation to Discipline," and the file, finds that the Report and Recommendation should be approved, confirmed and adopted by the Court; and that Respondent L. Robert Murray should be publicly censured in the manner set forth in the Report and Recommendation. It is, therefore,

**ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

**ADJUDGED AND ORDERED** that L. Robert Murray shall receive a public censure for his conduct, and he shall be publicly censured in a manner consistent with the recommended censure contained in the Report and Recommendation for Public Censure; and it is further

**ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, L. Robert Murray shall reimburse the Wyoming State Bar the amount of $100.00 for some of the costs incurred in handling this matter as well as pay an administrative fee of $500.00. Mr. Murray shall pay the total amount of $600.00 to the Clerk of the Board of Professional Responsibility on or before November 1, 2006; and it is further

**ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

**ORDERED** that, pursuant to Rule 4(c) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

**ORDERED** that the Clerk of this Court cause a copy of the Order of Public Censure to be served upon Respondent L. Robert Murray; and it is further

**ORDERED** that the Clerk of this Court transmit a copy of this Order of Public Cen-

sure to members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

## BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY WYOMING STATE BAR STATE OF WYOMING

In the matter of
L. Robert Murray WSB Attorney No. 5-2874, Respondent

Docket No. 2006-02

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

The Board of Professional Responsibility makes the following report and recommendation for public censure, with its findings of fact, conclusions of law, and recommendation to the Supreme Court of Wyoming:

### FINDINGS OF FACT

1. Respondent is currently an active member of the Wyoming State Bar, registration number 5-2874, and has been since 1992. Respondent has been a member of the Colorado State Bar since 1990, registration number 19902, and his membership is currently in inactive status. Respondent resides in Cheyenne, Wyoming.

2. On Tuesday, October 25, 2005, Respondent began to assist the Fremont County and Prosecuting Attorney in the murder case of the *State of Wyoming v. Floyd Dewayne Grady*, Crim.No. 5988 (Wy. D.C. Ninth Judicial District). The defendant was charged with the murder of Tammy Sue Watts, who was sexually assaulted and killed by strangulation and repeated blows to the head on April 15, 2004. Floyd Dewayne Grady was subsequently charged in the Watts murder by the State of Wyoming with two counts of first-degree murder, attempted sexual assault and kidnapping. The State also sought the death penalty upon conviction. Grady had been incarcerated at the Wyoming State Penitentiary in Rawlins and was transferred to the Honor Farm sometime before the killing. Grady had been serving a 10 to 30 year sentence stemming from a 1995 violent rape conviction in Laramie County, Wyoming. *Grady v. State*, 914 P.2d 1230 (Wy. 1996).

3. A jury trial in the case began during the week of October 31, 2005 and ended Friday, November 18, 2005, in the late afternoon after the jury announced it was hopelessly deadlocked. The Honorable Norman E. Young declared a mistrial and discharged the jury. Respondent represented the State of Wyoming during the trial as a specially appointed Deputy County Attorney.

4. After the jury was discharged, some of the jurors who held out for a guilty verdict discussed their concerns about the jury's deliberations with Judge Young on the record. Those jurors and other jurors who held out for a guilty verdict thereafter stayed in the courtroom and later moved to the County Attorney's Office to speak to the prosecution team. Respondent joined the conversation with the discharged jurors after meeting with the victim's family. After some time passed, Respondent joined members of the prosecution team and some of the discharged jurors, accompanied by several spouses, at a restaurant that shares space with a bar in Lander, Wyoming.

5. Approximately a half-hour later, one of the two discharged jurors who held out for acquittal of the defendant arrived at the restaurant to pick up a take-out order of food. A member of the prosecution team approached the discharged juror to discuss her jury service. The discharged juror was standing at a counter across the room from the table where Respondent was sitting with members of the prosecution team and other discharged jurors. Upon seeing the other discharged jurors with the prosecution team, the discharged juror made comments towards the group about her perception of jurors socializing with the prosecution team. At that time, the discharged juror observed Respondent make a derogatory remark about her to the persons sitting with him. The discharged juror later approached Respondent and asked if Respondent had made a derogatory remark about her. Respondent repeated the derogatory remark.

6. Respondent's conduct was prejudicial to the administration of justice in violation of Rule 8.4 of the Wyoming Rules of Professional Conduct, in effect on November 18, 2005.

7. Later in the evening of November 18, 2005, Respondent engaged in a casual conversation and under informal circumstances with a member of the print-media on the sidewalk outside the front entrance to the same establishment in Lander, Wyoming. From the beginning of the conversation, Respondent understood the conversation was "off the record," and Respondent further understood that Respondent would not be quoted even as an "anonymous source." During the conversation, Respondent made extrajudicial statements related to the character of the defendant and expressed his opinion as to the guilt of the defendant. Respondent did not act intentionally—either knowingly or purposefully—to violate the Wyoming Rules of Professional Conduct. His conduct, however, was wrong. Respondent acknowledges that Respondent acted in reckless disregard of his ethical obligations regarding extrajudicial statements.

8. Respondent made extrajudicial statements that a reasonable person would expect to be disseminated by means of public communication and Respondent reasonably should have known that his extrajudicial statements would have a substantial likelihood of materially prejudicing an adjudicative proceeding. At the time Respondent made these statements, Respondent knew Rule 3.6 of the Wyoming Rules of Professional Conduct, in effect on November 18, 2005, provided that extrajudicial statements regarding the character of the accused and extrajudicial statements expressing an opinion as to the guilt of a defendant are presumptively improper when made in a criminal case.

9. Respondent's conduct violated Rule 3.6 of the Wyoming Rules of Professional Conduct, in effect on November 18, 2005.

10. On November 30, 2005, defense counsel moved to disqualify Respondent from the retrial of the defendant and for a change of venue, and requested a show cause order to hold Respondent in contempt based upon the extrajudicial statements Respondent made to the member of the print-media.

11. An Order to Show Cause was issued by Judge Young on December 5, 2005, requiring Respondent to appear and show cause why Respondent should not be held in contempt for making extrajudicial statements in violation of an order entered by Judge Young, on April 20, 2005, incorporating the prohibited categories of Wyoming State Bar Rule 3.6. The Show Cause hearing and hearing on the defense motions were held on December 15, 2005, during which Judge Young criticized Respondent for his extrajudicial statements and his conduct toward the discharged juror. Judge Young granted the defense's renewed motion for change of venue, accepted Respondent's resignation from the case and, in light of his action, granted a defense motion to withdraw its motion to hold Respondent in contempt. A new trial was set in the matter for April 2006 in Jackson, Wyoming. Judge Young entered his order changing the venue for trial based upon all of the media reports following his declaration of a mistrial, including the article written by the member of the media that reported the extrajudicial statements Respondent made to him during our conversation on November 18, 2005.

12. At the conclusion of the retrial in Jackson, Wyoming, in April 2006, the jury returned a unanimous verdict finding Floyd Dewayne Grady guilty of the sexual assault and murder of Tammy Sue Watts, declined to impose the death penalty and returned a verdict recommending the defendant be sentenced to life imprisonment without the possibility of parole. The Fremont County and Prosecuting Attorney advised Respondent that his misconduct in making a derogatory remark to the discharged juror and his misconduct in making extrajudicial statements to a member of the print-media did not affect the retrial of Floyd Dewayne Grady.

13. This is the first time a complaint has been filed against Respondent with the Wyoming Board of Professional Responsibility. Before and after this incident with the discharged juror, Respondent has tried numerous jury trials. Never before or after the incident on November 18, 2005, has Respon-

dent made a derogatory remark to any juror. It is usually his practice to refrain from discussing a case with a discharged juror.

14. Respondent has been disciplined by his employer for the misconduct Respondent engaged in during the evening hours of November 18, 2005. On March 9, 2006, his employer required Respondent to follow an aggressive 60 day performance improvement plan, which Respondent successfully completed on May 9, 2006. Respondent also received a 14 day unpaid suspension, which Respondent served in August 2006.

## CONCLUSIONS OF LAW

15. Standard 6.33 of the ABA Standards for Imposing Lawyer Sanctions discusses the acts which result in a public censure for violation of Rule 3.5: "Reprimand [or public censure] is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding."

16. Standard 5.23 of the ABA Standards for Imposing Lawyer Sanctions discusses the acts which result in a public censure for violation of Rule 3.8: "Reprimand [or public censure] is generally appropriate when a lawyer in an official or governmental position negligently fails to follow proper procedures or rules, and causes injury or potential injury to a party or to the integrity of the legal process."

17. ABA Standards for Imposing Lawyer Sanctions 9.1 provides for consideration of aggravating and mitigating circumstances in deciding on an appropriate sanction. Section 9.21 defines aggravating circumstances as "any consideration, or factors that may justify an increase in the degree of discipline to be imposed." Section 9.31 defines mitigating circumstances as "any considerations, or factors that may justify a reduction in the degree of discipline to be imposed."

a. Applicable aggravating factors in this case are:

i. Section 9.22(i)—substantial experience in the practice of law.

b. Applicable mitigating factors are:

i. Section 9.32(a)—absence of a prior disciplinary record;

ii. Section 9.32(b)—absence of a dishonest or selfish motive;

iii. Section 9.32(e)—full and free disclosure to disciplinary board or cooperative attitude toward proceedings; and

iv. Section 9.32(k)—imposition of other penalties or sanctions.

## RECOMMENDATION TO THE SUPREME COURT OF WYOMING

18. As an appropriate sanction for Respondent's violations of the Wyoming Rules of Professional Conduct, it is recommended that he receive a public censure.

19. The following should be provided in a press release:

"Cheyenne Attorney L. Robert Murray received a formal public censure by order of the Wyoming Supreme Court on _____. Mr. Murray made a derogatory remark to a juror who had been discharged following a mistrial in a first degree homicide case. In addition, Mr. Murray made inappropriate comments to a member of the print media following this jury trial. The Wyoming Rules of Professional Conduct regulate the conduct of Wyoming attorneys. Mr. Murray's derogatory remark to the discharged juror violated Rule 8.4(d), which prohibits an attorney from engaging in conduct that is prejudicial to the administration of justice. He also violated Rule 3.6, in effect on November 18, 2005, which prohibited a lawyer from making extrajudicial statements relating to the character of the accused and prohibited a lawyer from expressing an opinion as to the guilt of a defendant. Under the Rule in effect on November 11, 2005, Mr. Murray's extrajudicial statements presumptively had a substantial likelihood of materially prejudicing an adjudicative proceeding. The sanction was mitigated since Mr. Murray had no prior disciplinary record. Mr. Murray stipulated to these facts and consented to this discipline. The Board of Professional Responsibility approved the

stipulation, recommending that the Wyoming Supreme Court publicly discipline Mr. Murray. After reviewing the record and recommendation, the Wyoming Supreme Court entered its order publicly censuring Mr. Murray and required him reimburse the Wyoming State Bar $100 in costs and pay an administrative fee of $500."

19. Respondent should reimburse the Wyoming State Bar for the costs of handling this matter, capped at $100.00 and pay the administrative fee of $500.00 no later than November 1, 2006.

This decision is unanimously made by a quorum of the Board of Professional Responsibility. It is therefore so recommended September 7, 2006.

/s/ Richard Honaker
Richard Honaker, Vice-Chair
Board of Professional Responsibility